UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, for the use and benefit of ALAMEDA ELECTRIC DISTRIBUTORS, INC., <br><br>　　　　　Plaintiff, <br><br>　　v. <br><br>ECO ENGINEERING, INC., <br><br>　　　　　Defendant. | Case No. 24-cv-06754-HSG   (TSH) <br><br>**REPORT & RECOMMENDATION RE: MOTION FOR DEFAULT JUDGMENT** <br><br>Re: Dkt. No. 43 |

## I.   INTRODUCTION

Plaintiff Alameda Electric Distributors, Inc. brings this breach of contract case against Defendant ECO Engineering, Inc., doing business as Consolidated Lighting Services ("Eco"). Pending before the Court is Plaintiff's Motion for Default Judgment. ECF No 43. Eco has neither opposed the motion nor appeared in this case. The undersigned finds this matter suitable for disposition without oral argument pursuant to Civil Local Rule 7-1(b). For the reasons stated below, the undersigned **RECOMMENDS** the District Court **GRANT** the motion.

## II.   BACKGROUND

Plaintiff is a California corporation with its principal place of business in Hayward, California. Compl. ¶ 4, ECF No. 1. Eco is an Ohio corporation. *Id.* ¶ 6. Plaintiff also named Ameresco, Inc. and Western Surety Company as defendants in this case, but it subsequently dismissed them. ECF Nos. 28, 36.

On or before July 2003, Ameresco and Eco contracted with the U.S. Department of Defense on the federal project known as the "Energy Savings Performance Contract – USCGC Training Center Petaluma, CA," (the "Project") pursuant to Solicitation No. SP0604-21-0407, which was for a sum in excess of $100,000 (the "DOD Contract"). Compl. ¶ 7. The DOD

1    Contract called for Eco, Ameresco, and/or Does 1-25 to install, maintain, operate, and remove the

2    electrical and utility systems on the U.S. Coast Guard Training Center Petaluma.  *Id.*

3            Plaintiff alleges Eco, Ameresco, and Does 1-25 obtained a Miller Act[1] payment bond,

4    bond number 30132777 from Western Surety, as required by the DOD Contract.  *Id.* ¶ 8.  In the

5    bond, Western Surety agreed to be bound jointly and severally with Eco, Amersco and Does 1-25

6    to make payment to all persons having a direct contractual relationship with them, or to any

7    subcontractor who furnished labor, material or both in the prosecution of the work provided for in

8    the Project or DOD Contract.  *Id.*

9            On October 27, 2023, Plaintiff and Eco entered into a Credit Agreement in which Plaintiff

10   agreed to furnish materials, equipment, and other facilities required to complete the work included

11   on the Project and DOD Contract (the "Subcontract").  *Id.* ¶ 9; Hardesy Decl., Ex. A (Credit

12   Agreement). ECF No. 43-2.  Eco and Ameresco agreed to pay Plaintiff "NET 30 days from

13   Invoice Date."  *Id.* (both).  Eco ordered, and Plaintiff furnished, materials for the Project and the

14   work identified in the DOD Contract.  Compl. ¶ 10.  After Plaintiff completed its work on or about

15   January 18, 2024, Eco failed to pay $67,733.54 due under the Subcontract within 30 days of

16   Plaintiff's invoice dated March 31, 2024.  *Id.* ¶¶ 10-11; Hardesty Decl. ¶ 5.  Plaintiff submitted a

17   claim for payment to Western Surety under the bond, but Western has failed to pay Plaintiff the

18   amount due.  Compl. ¶ 12; Hardesty Decl., Ex. B (billing statement).

19           On September 26, 2024, Plaintiff filed its complaint against Eco, Ameresco, Western

20   Surety, and Does 1-25, alleging claims for (1) breach of contract, (2) quantum meruit, (3) Miller

21   Act payment bond, (4) account stated, and (5) open book account.  Compl. ¶¶ 13-32.  Plaintiff

22   voluntarily dismissed Western Surety on December 20, 2024 (ECF No. 28) and voluntarily

23   dismissed Ameresco on April 8, 2025 (ECF No. 36).

24           Plaintiff served Eco on October 25, 2024, by serving Lisa Roznik, Eco's authorized agent

---

[1] The Miller Act, 40 U.S.C. §§ 3131–34, governs surety bonds on federal construction projects that cost more than $100,000.  Under the Act, a contractor must post both a performance bond and a payment bond for the project.  40 U.S.C. § 3131.  "Every person that has furnished labor or material in carrying out work" on a project covered by the Miller Act, "and that has not been paid in full within 90 days after the day on which the person did or performed the last of the labor" may bring suit on the payment bond for the amount still due.  40 U.S.C. § 3133,

1   for service, at 4568 Mayfield Road, Suite 204, Cleveland, OH 44121.  ECF No. 33.  Eco has made

2   no appearance.  On January 28, 2025, Plaintiff moved for entry of default as to Eco, and the Clerk

3   of Court entered its default on January 30, 2025.  ECF Nos. 33, 34.

4         Plaintiff filed the present motion on May 12, 2025.

### III.    LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) permits a court, following default by a defendant, to enter default judgment in a case.  "The district court's decision whether to enter default judgment is a discretionary one."  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

At the default judgment stage, the factual allegations of the complaint, except those concerning damages, "together with other competent evidence submitted" are deemed admitted by the non-responding parties.  *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1000 (N.D. Cal. 2001); *see also Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002) ("With respect to the determination of liability and the default judgment itself, the general rule is that well-pled allegations in the complaint regarding liability are deemed true.").  "However, a defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) (citation and quotation omitted)).  Therefore, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."  *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)); *accord DIRECTV*, 503 F.3d at 854.  Further, the scope of relief is limited by Federal Rule of Civil Procedure 54(c), which states that a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."

In determining whether default judgment is appropriate, the Ninth Circuit has enumerated the following factors for courts to consider:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

3

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

## IV.   DISCUSSION

### A.   Jurisdiction and Service of Process

In considering whether to enter default judgment, a district court must first determine whether it has jurisdiction over the subject matter and the parties to the case. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). "[T]he district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) (considering subject matter jurisdiction on a 12(b)(1) motion).

#### 1.   Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). As such, "federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011); *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1116 (9th Cir. 2004) (noting that district courts are "obligated to consider sua sponte whether [they] have subject matter jurisdiction"). There are two bases for federal subject matter jurisdiction: (1) federal question jurisdiction under 28 U.S.C. § 1331 and (2) diversity jurisdiction under 28 U.S.C. § 1332. A district court has federal question jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States." *Id.* at § 1331. A cause of action "arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." *Hansen v. Blue Cross of Cal.*, 891 F.2d 1384, 1386 (9th Cir. 1989). A district court has diversity jurisdiction "where the matter in controversy exceeds the sum or value of $75,000 . . . and is between citizens of different states, or citizens of a State and citizens or subjects of a foreign state." *Id.*

The allegations in the complaint are sufficient to establish subject matter jurisdiction because this action was brought, in part, under the Miller Act, 40 U.S.C. § 3133. *See* 28 U.S.C. § 1352 ("The district courts shall have original jurisdiction, concurrent with State courts, of any action on a bond executed under any law of the United States[.]"; *U.S. ex rel. Hajoca Corp. v.*

4

1   *Aeroplate Corp.*, 2013 WL 3729692, at *3 (E.D. Cal. July 12, 2013), *report and recommendation*
2   *adopted*, 2013 WL 4500475 (E.D. Cal. Aug. 16, 2013) (subject matter jurisdiction established
3   where plaintiff, who supplied materials to a federal work of improvement, brought claim under the
4   Miller Act, finding "[a]s a materials supplier on a federal construction project, Plaintiff is entitled
5   to recovery on the payment bond pursuant to 40 U.S.C. §§ 3133(a), 3133(b)(1), and 3133(b)(2).").

### 2. Personal Jurisdiction

#### a. Basis for Personal Jurisdiction

To enter default judgment, the Court must have a basis for the exercise of personal jurisdiction over the defendants in default. *In re Tuli*, 172 F.3d at 712. "Without a proper basis for [personal] jurisdiction, or in the absence of proper service of process, the district court has no power to render any judgment against the defendant's person or property unless the defendant has consented to jurisdiction or waived the lack of process." *S.E.C. v. Ross*, 504 F.3d 1130, 1138-39 (9th Cir. 2007).

Eco is an Ohio corporation. "'For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (quoting *Int'l Shoe Co. v. State of Wash. Off. Of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)). A federal court sitting in diversity borrows the long-arm jurisdictional statute of the forum state. *See Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir. 1987). California's long-arm statute authorizes the exercise of personal jurisdiction on any basis that is consistent with the state or federal constitution. Cal. Civ. Proc. Code § 410.10. The personal-jurisdiction analysis thus collapses into a single inquiry under federal due process. *See Lake*, 817 F.2d at 1420.

Jurisdiction may be either general, which requires "continuous and systemic" with a state and "permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world," or specific, which subjects a non-resident defendant to a court's power only for claims arising out of the defendant's activity in the forum state. *Schwarzenegger*, 374 F.3d at 801-02. Plaintiff's allegations do not show Eco has continuous and systemic contact with

California that would support general jurisdiction. Thus, the undersigned focuses on specific jurisdiction.

The Ninth Circuit uses a three-prong test for analyzing a claim of specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Id.* at 802 (quoting *Lake*, 817 F.2d at 1421). "The plaintiff bears the burden of satisfying the first two prongs of the test." *Id.* (citation omitted). "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

### 1. Purposeful Availment or Purposeful Direction

As to the first prong, a plaintiff may satisfy its burden by showing "either purposeful availment" or "purposeful direction," which are "two distinct concepts." *Id.* at 802. A purposeful availment analysis is appropriate here as Plaintiff brings a claim for breach of contract. *Id.* "To have purposefully availed itself of the privilege of doing business in the forum, a defendant must have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) (simplified).

The DOD Contract called for Eco to install, maintain, operate, and remove the electrical and utility systems on the U.S. Coast Guard Training Center in Petaluma, California. Compl. ¶ 7. As part of the work, Plaintiff and Eco entered into a subcontract in which Plaintiff agreed to furnish materials, equipment, and other facilities required to complete the work. *Id.* ¶ 9; Hardesy Decl., Ex. A. These allegations sufficiently establish that Eco purposefully availed itself of the

1  privilege of doing business in California. *See Schwarzenegger*, 374 F.3d at 802 ("A showing that
2  a defendant purposefully availed himself of the privilege of doing business in a forum state
3  typically consists of evidence of the defendant's actions in the forum, such as executing or
4  performing a contract there."); *Walden v. Fiore*, 571 U.S. 277, 285 (2014) ("[I]t is the defendant's
5  conduct that must form the necessary connection with the forum State that is the basis for its
6  jurisdiction over him.") (citing *Burger King*, 471 U.S. at 478); *U.S. ex rel. Hajoca Corp.*, 2013
7  WL 3729692, at *3 ("Personal jurisdiction arises from [nonresident] Defendants' commercial
8  activities within California.").

### 2. Forum-Related Activities

As to the second prong, the Ninth Circuit uses a "but for" test under which "a lawsuit arises out of a defendant's contacts with the forum state if a direct nexus exists between those contacts and the cause of action." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 741 (9th Cir. 2013), *aff'd sub nom. Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373 (2015) (citations and internal quotation marks omitted). Here, the actions giving rise to Plaintiff's breach of contract claim arise from Eco's business dealings in California related to the USCGC Training Center project in Petaluma. Plaintiff's claims focus on Eco's performance, or lack thereof, of the contract concerning the materials it purchased for installation on the project. Therefore, "but for" Eco's contacts, Plaintiff would not have suffered harm in this State. Thus, Plaintiff satisfies the second prong of specific jurisdiction.

### 3. Reasonableness

As Plaintiff has satisfied the first two prongs of the test, "the burden shifts to the defendant to make a 'compelling case' that the exercise of jurisdiction would be unreasonable." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d at 741 (quoting *Burger King*, 471 U.S. at 476-77. In making this determination, courts the following seven factors: "(1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and

1 effective relief; and (7) the existence of an alternative forum." *CE Distribution, LLC v. New Sensor Corp.*, 380 F.3d 1107, 1112 (9th Cir. 2004) (citation and quotation marks omitted). However, as Eco made no appearance, it has failed to carry its burden of making this showing. *See Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1094 (N.D. Cal. 2014) ("Defendant Catron has essentially waived his opportunity to make this showing by failing to participate in this litigation."); *Sec. & Exch. Comm'n v. Nagaicevs*, 2013 WL 3730578, at *3 (N.D. Cal. July 12, 2013) ("By failing to appear, Mr. Nagaicevs has failed to carry his burden of showing that the exercise of jurisdiction would be unreasonable."). Regardless, given Eco's presence in California related to the parties' contract, the undersigned finds no reason to conclude that the burden on Eco to defend itself in California outweighs the interests favoring the exercise of jurisdiction.

### a.     Service of Process

Personal jurisdiction also requires notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). "A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under [Federal Rule of Civil Procedure 4]." *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988).

Rule 4(h)(1) authorizes service of process on a domestic corporation, partnership or other unincorporated association in a manner consistent with Rule 4(e)(1), which in turn allows for service "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." California law provides that a plaintiff may serve a summons on a corporation by delivering a copy of the summons and the complaint to "the person designated as agent for service of process." Cal. Civ. Proc. Code § 416.10. Here, Eco was personally served through its Registered Agent on October 25, 2024. ECF No. 33. Accordingly, Plaintiff has met the requirements for service.

### B.     *Eitel* Factors

Applying the seven *Eitel* factors, the undersigned finds default judgment is warranted in favor of Plaintiff.

### 1. The Possibility of Prejudice

The first factor the Court considers is the possibility of prejudice if a default judgment is not entered. *Eitel*, 782 F.2d at 1471–72. This factor weighs in favor of default judgment "when a defendant has failed to appear or defend against a suit, and the plaintiffs could not otherwise seek relief." *Vietnam Reform Party v. Viet Tan - Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019) (citations omitted); *IO Grp., Inc. v. Jordon*, 708 F. Supp. 2d 989, 997 (N.D. Cal. 2010) (prejudice exists where denying the requested default judgment would leave the plaintiff without a proper remedy). Because Eco has made no appearance, Plaintiff would be prejudiced absent a default judgment because there would be no remedy. This factor weighs in favor of default judgment.

### 2. Substantive Claims and the Sufficiency of the Complaint

The second and third *Eitel* factors focus on the merits of the substantive claims and the sufficiency of the complaint. *Eitel*, 782 F.2d at 1471–72. "These two factors are often analyzed together and require courts to consider whether a plaintiff has 'state[d] a claim on which [it] may recover.'" *Vietnam Reform Party*, 416 F. Supp. 3d at 962 (quoting *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002)). "Of all the *Eitel* factors, courts often consider the second and third factors to be 'the most important.'" *Id.* (quoting *Sanrio, Inc. v. Jay Yoon*, 2012 WL 610451, at *4 (N.D. Cal. Feb. 24, 2012)).

Plaintiff brings five claims: (1) breach of contract, (2) quantum meruit, (3) Miller Act payment bond, (4) account stated, and (5) open book account. Compl. ¶¶ 13-32. It seeks default judgment as to three: breach of contract, account stated, and open book account. *See* Supp'l Brief at 8, ECF No. 45 ("Plaintiff seek entry of judgment for the First Claim for Breach of Contract, the Fourth Claim for Common Count for Account Stated, the Fifth Claim for Open Book Account, and does not seek judgment for the Second Claim for Quantum Meruit nor the Third Claim for the Miller Act Payment Bond.").

#### a. Breach of Contract

The parties' agreement "shall be interpreted in accordance with the laws of the State of

9

California." Hardesty Decl., Ex. B, Terms & Conditions ¶ 8. In California,[2] "a freely and voluntarily agreed-upon choice of law provision in a contract is enforceable 'if the chosen state has a substantial relationship to the parties or the transaction or any other reasonable basis exists for the parties' choice of law.'" *1-800–Got Junk? LLC v. Super. Ct.*, 189 Cal. App. 4th 500, 513-14 (2010) (quoting *Trust One Mortg. Corp. v. Invest Am. Mortg. Corp.*, 134 Cal. App. 4th 1302, 1308 (2005)). There is "a strong policy in favor enforcing such provisions." *Id*. at 513. Applying the California law approach, the undersigned finds that California bears a substantial relationship to the parties' transaction. Plaintiff is a resident of California, the project took place here, and enforcing the parties' choice of law provision is not contrary to any fundamental policy of California. *See Nedlloyd Lines B.V. v. Superior Ct.*, 3 Cal. 4th 459, 467 (1992) (A substantial relationship is present when "one of the parties is domiciled" in the chosen state.).

"[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). According to the complaint, Plaintiff entered into an agreement with Eco to furnish materials, equipment, and other facilities required to complete the work included on the Project in Petaluma, California. Compl ¶ 9. Eco and Ameresco agreed to pay Plaintiff "NET 30 days from Invoice Date." *Id.* Eco ordered, and Plaintiff furnished, materials for the Project and the work identified in the DOD Contract. *Id.* ¶ 10. Plaintiff completed its work or the furnishing of materials on or about January 18, 2024, but Eco failed to pay Plaintiff $67,733.54 due under the Subcontract within 30 days of Plaintiff's invoices. *Id.* ¶¶ 10, 11. Plaintiff submitted a claim for payment to Western Surety under the bond, but Western has failed to pay Plaintiff the amount due. *Id.* ¶ 12. As such, Plaintiff has alleged the existence of an agreement, Plaintiff's performance of that agreement by furnishing materials, and Eco's breach of the agreement by failing to pay

---

[2] In both diversity and federal question actions, federal courts apply the choice of law rules of the forum state. *See Am. Triticale, Inc. v. Nytco Servs. Inc.*, 664 F.2d 1136, 1141 (9th Cir. 1981) ("It is well settled that a federal court exercising diversity jurisdiction must apply substantive state law.") (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)); *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1080 (9th Cir. 2009) ("In a federal question action that involves supplemental jurisdiction over state law claims, [courts] apply the choice of law rules of the forum state.").

Plaintiff, resulting in damage to Plaintiff. Thus, the undersigned finds Plaintiff has sufficiently stated a breach of contract claim. *See U.S. ex rel. Hajoca Corp.*, 2013 WL 3729692, at *5 (finding breach of contract established at default judgment stage where plaintiff entered into an agreement to sell defendants construction goods, but defendants subsequently refused to pay any part of the amount owed after delivery); *United States for use & benefit of Rexel, Inc. v. Hubzone Corp.*, 2019 WL 1150028, at *3 (E.D. Cal. Mar. 13, 2019), *report and recommendation adopted*, 2019 WL 1427390 (E.D. Cal. Mar. 29, 2019) (same).

### b. Account Stated

An account stated claim has three elements: "(1) previous transactions between the parties establishing the relationship of debtor and creditor; (2) an agreement between the parties, express or implied, on the amount due from the debtor to the creditor; and (3) a promise by the debtor, express or implied, to pay the amount due." *Zinn v. Fred R. Bright Co.*, 271 Cal. App. 2d 597, 600 (1969). "In the usual situation, it comes about by the creditor rendering a statement of the account to the debtor. If the debtor fails to object to the statement within a reasonable time, the law implies his agreement that the account is correct as rendered." *Id*.

Plaintiff has alleged it entered into the agreement with Eco to furnish materials and equipment required to complete the Project, an account was stated in writing between Plaintiff and Eco wherein it was stated that Eco was indebted to Plaintiff, and Eco subsequently failed to pay Plaintiff $67,733.54 due. Compl. ¶¶ 26-28. As such, the undersigned finds Plaintiff has sufficiently alleged a claim for account stated. *See U.S. ex rel. Hajoca Corp.*, 2013 WL 3729692, at *4 (finding account stated claim established at default judgment stage where plaintiff alleged an agreement with defendants for plumbing materials, plaintiff issued a demand for payment on the statement of account to defendants regarding the amount due, and defendants had not appeared to contest the statement of account).

### c. Open Book Account

Under California law, a "book account" is defined as:

> a detailed statement which constitutes the principal record of one or more transactions between a debtor and a creditor arising out of a contract or some fiduciary relation, and shows the debits and credits

11

> in connection therewith, and against whom and in favor of whom entries are made, is entered in the regular course of business as conducted by such creditor or fiduciary, and is kept in a reasonably permanent form and manner and is (1) in a bound book, or (2) on a sheet or sheets fastened in a book or to backing but detachable therefrom, or (3) on a card or cards of a permanent character, or is kept in any other reasonably permanent form and manner.

Cal. Civ. Proc. Code § 337a. A claim on an open book account is proper "whenever the plaintiff claims a sum of money due, either as an indebtedness in a sum certain, or for the reasonable value of services, goods, etc., furnished." *Kawasho Int'l, U.S.A. v. Lakewood Pipe Svc., Inc.*, 152 Cal. App. 3d 785, 793 (1983).

Plaintiff alleges that after it and Eco entered into their agreement, it kept a written/electronic account of the debits and credits involved in the regular course of the business, and Eco has now failed to pay the balance due, despite demand being made. Compl. ¶¶ 30-32. As such, the undersigned finds Plaintiff has sufficiently alleged a claim for open book account. *See U.S. ex rel. Hajoca Corp.*, 2013 WL 3729692, at *4 (finding open book account claim established at default judgment stage where plaintiff alleged defendants "became indebted to Plaintiff on an open book account for money due in the sum of $58,010.00 for the furnishing of plumbing, heating and/or air-conditioning materials and related products sold and delivered by Plaintiff to Defendants.").

### 3. The Sum of Money at Stake in the Action

Under the fourth *Eitel* factor, "the Court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1050 (N.D. Cal. 2010) (citation and quotation marks omitted). When the amount at stake is substantial or unreasonable in light of the allegations in the complaint, default judgment is disfavored. *See Eitel*, 782 F.2d at 1472 (affirming the denial of default judgment where the plaintiff sought $3 million in damages and the parties disputed material facts in the pleadings). "However, when the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate." *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1100 (N.D. Cal. 2014).

Here, Plaintiff seeks the damages it incurred after Eco failed to pay the amount due under

1    the contract. As the amount owed is tailored to Eco's specific misconduct, this factor also weighs
2    in favor of granting default judgment.

### 4. The Possibility of Dispute Concerning Material Facts

The fifth *Eitel* factor examines the likelihood of dispute between the parties regarding the material facts surrounding the case. *Eitel*, 782 F.2d at 1471–72. However, upon entry of default, the defendant is "deemed to have admitted all well-pleaded factual allegations" in the complaint. *DIRECTV, Inc.*, 503 F.3d at 851 (citing Fed. R. Civ. P. 55(a)). Moreover, as outlined above, Plaintiff provided the Court with well-pleaded allegations supporting the claims. Accordingly, this factor weighs in favor of default judgment.

### 5. Whether Default was Due to Excusable Neglect

The sixth *Eitel* factor examines whether the defendant's failure to respond to the complaint was the result of excusable neglect. *Eitel*, 782 F.2d at 1471–72. Here, Plaintiff provided adequate notice of this action, *see* ECF No. 33, yet Eco made no appearance and failed to respond to the present motion. *See S.E.C. v. Internet Sols. for Bus. Inc.*, 509 F.3d 1161, 1166 (9th Cir. 2007) ("A signed return of service constitutes prima facie evidence of valid service which can be overcome only by strong and convincing evidence.") (simplified). Further, there is nothing in the record suggesting this failure is based on excusable neglect. *See Shanghai Automation Instrument Co.*, 194 F. Supp. 2d at 1005 (default after proper service was not excusable neglect). Thus, this factor supports default judgment.

### 6. Policy Favoring Deciding a Case on its Merits

The last *Eitel* factor examines whether the policy of deciding a case based on the merits precludes entry of default judgment. *Eitel*, 782 F.2d at 1472. In *Eitel*, the Ninth Circuit admonished that "[c]ases should be decided on their merits whenever reasonably possible." *Id.* "The existence of Federal Rule of Civil Procedure 55(b), however, shows that this policy is not dispositive." *McMillan Data Commc'ns, Inc. v. AmeriCom Automation Servs., Inc.*, 2015 WL 4380965, at *11 (N.D. Cal. July 16, 2015) (citing *Kloepping v. Fireman's Fund*, 1996 WL 75314, at *3 (N.D. Cal. Feb. 13, 1996)). Further, "deciding the case on the merits is impossible where a party refuses to participate." *Vietnam Reform Party*, 416 F. Supp. 3d at 970. Thus, because Eco

13

1  made no effort to respond to communication attempts by Plaintiff and in no way participated in
2  the proceedings, "[t]his factor thus weighs against, but does not preclude, entry of default
3  judgment." *Id.*

### 7. Summary of the *Eitel* Factors

In sum, the majority of the *Eitel* factors weigh in favor of granting default judgment. Accordingly, the undersigned **RECOMMENDS** the District Court **GRANT** Plaintiff's motion and enter default judgment against Eco.

## C. Relief Sought

The Court next turns to the relief Plaintiff seeks. Once liability is established, the plaintiff must establish that the requested relief is appropriate. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). A "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

### 1. Damages

The moving party has the burden to "prove up" the amount of damages. *United States v. Sundberg*, 2011 WL 3667458, at *6 (N.D. Cal. Aug. 22, 2011) (citation omitted). Where the amount of damages "is liquid or capable of ascertainment from definite figures contained in documentary evidence or detailed affidavits, the Court may enter default judgment without a hearing on damages." *Id.* (internal quotation marks and citation omitted); *see also Pope v. United States*, 323 U.S. 1, 12 (1944) ("It is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is entitled to recover and to give judgment accordingly.").

Plaintiff has established Eco failed to pay $67,733.54 due under the subcontract within 30 days of Plaintiff's invoices. Hardesty Decl. ¶ 5 & Ex. B. Since the filing of its complaint, Plaintiff received a partial payment of $15,000 on February 26, 2025. *Id.* ¶ 5. Accordingly, Plaintiff is entitled to compensatory damages in the amount of $52,733.54.

### 2. Interest

Plaintiff requests both prejudgment and post-judgment interest.

### a. Prejudgment Interest

Although the parties' agreement does not provide a legal rate of interest, it is to "be interpreted in accordance with the laws of the State of California." Hardesty Decl., Ex. B, Terms & Conditions ¶ 8. California Civil Code section 3287(a) states that "a person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in the person upon a particular day, is entitled also to recover interest thereon from that day." Specifically, section 3289 states that for a breach of contract claim, "if a contract entered into after January 1, 1986, does not stipulate a legal rate of interest, the obligation shall bear interest at a rate of 10 percent per annum after a breach." Cal. Civ. Code § 3289(b). As such, Plaintiff is entitled to prejudgment interest at a rate of 10%. *See Johanson Transportation Serv. v. Shelby Transportation, Inc.*, 2025 WL 306217, at *5 (N.D. Cal. Jan. 27, 2025) (awarding prejudgment interest at 10% where contract did not provide rate); *Am. Auto. Ass/n of N. California, Nevada & Utah v. Voi Logistics, LLC*, 2024 WL 5506726, at *5 (N.D. Cal. Aug. 2, 2024) (same).

Eco failed to pay the full balance due to Plaintiff on April 30, 2024. Hardesty Decl. ¶ 5. Thus, prejudgment interest accrued at the rate of $18.55 per day ($67,733.54 x .10 / 365). As Plaintiff received partial payment of $15,000 on February 26, 2025, it is entitled to prejudgment interest of $5,602.10 on the total sum due from April 30, 2024 through February 26, 2025. From February 27, 2025 through entry of judgment, Plaintiff is entitled to prejudgment interest on the remaining balance in the amount of $14.45 per day ($52,733.54 x .10 / 365).

### b. Post-judgment Interest

Plaintiff also seeks post-judgment interest pursuant to 28 U.S.C. § 1961, which states that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." Therefore, Plaintiff is entitled to post-judgment interest under 28 U.S.C. § 1961 on the entire amount of the judgment, including damages, prejudgment interest and attorneys' fees. *See, e.g., Am. Auto. Ass/n of N. California, Nevada & Utah*, 2024 WL 5506726, at *6; *Phillips 66 Co. v. California Pride, Inc.*, 2017 WL 2875736, at *12-13 (E.D. Cal. July 6, 2017), *report and recommendation adopted*, 2017 WL 3382974 (E.D. Cal. Aug. 7, 2017).

### 3. Attorneys' Fees

Under California law "a prevailing party may recover attorney's fees only when a statute or an agreement of the parties provides for fee shifting." *Kirby v. Immoos Fire Protection, Inc.*, 53 Cal. 4th 1244, 1248 (2012) ("[T]he 'American Rule' [is] that each party in a lawsuit ordinarily shall bear its own attorney's fees unless there is express statutory authorization to the contrary."). California Civil Code section 1717 states that attorney's fees, "[i]n any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party."

The contract with Eco provides for attorney's fees, so it comes under the exception to the American Rule. *See* Credit Agreement Terms & Conditions § 10 ("Should Alameda Electrical Distributors, Inc. or California Service Tool, Inc., incur attorney's and/or collection fees with or without the institution of court or arbitration proceedings in connection with the collection of any account due by the undersigned, the undersigned agrees to pay reasonable attorney's fees and all court and arbitration costs in connection with any such proceeding."); *U.S. ex rel. Hajoca Corp.*, 2013 WL 3729692, at *7 (awarding attorneys' fees under California law where parties' contract provided for such an award).

Reasonable attorneys' fees are generally based on the traditional "lodestar" calculation set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). *See Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). A reasonable fee is determined by multiplying (1) "the number of hours reasonably expended on the litigation" by (2) "a reasonable hourly rate." *Hensley*, 461 U.S. at 433. The lodestar amount may also be adjusted based on an evaluation of the factors articulated in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), which have not been subsumed in the lodestar calculation. *See Fischer*, 214 F.3d at 1119 (citation omitted).

#### a. Reasonableness of Hourly Billing Rate

To determine the appropriate lodestar amount, the Court must first assess the reasonableness of counsel's claimed hourly billing rate. *Credit Managers Ass'n of S. California v. Kennesaw Life & Acc. Ins. Co.*, 25 F.3d 743, 750 (9th Cir. 1994). Courts look to the prevailing market rates in the relevant community for similar work by attorneys of comparable skill,

16

experience, and reputation. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). Generally, the relevant community is the forum where the district court sits. *Id.* The applicant bears the burden to produce sufficient evidence that the rates claimed for its attorneys are in line with prevailing market rates. *Fischer*, 214 F.3d at 1121 (citing *Hensley*, 461 U.S. at 433). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). Put differently, the party seeking fees bears the burden to prove the reasonableness of hours expended using detailed time records documenting completed tasks and time expended. *Hensley*, 461 U.S. at 437; *Roberts v. City of Honolulu*, 938 F.3d 1020, 1024 (9th Cir. 2019) ("It is the responsibility of the attorney seeking fees to submit evidence to support the requested hourly rate.").

When a party seeking fees submits declarations, courts must consider those declarations and cannot substitute that analysis by only considering previous fee awards. *Roberts*, 938 F.3d at 1024 ("The district court diverged from the applicable standard in discarding the declarations entirely and considering *only* previous fee awards in determining the prevailing market rate.") (emphasis in original). Indeed, the Ninth Circuit has explained that solely "[e]xamining prior fee awards to [even the same attorneys] in the district [is] not an acceptable substitute for considering declarations submitted by [that attorney], and explaining why those declarations did or did not establish the prevailing hourly rate in the district." *Id.* at 1025.

Plaintiff's attorney, Dustin Amrein, billed at $475 per hour. Amrein Suppl. Decl. ¶ 7, ECF No. 45-1. Amrein has practiced law for ten years. *Id.* ¶ 8. The undersigned finds this rate is in line with those prevailing in the community and is therefore reasonable. *See Fed. Deposit Ins. Corp. v. Rothenberg*, 2024 WL 4859088, at *3 (N.D. Cal. Nov. 20, 2024) (in breach of contract case, noting that district courts in Northern California have found that rates of $475-$975 per hour for partners and $300-$490 per hour for associates are reasonable; awarding $829/hour for a partner with 40 years of experience, $845 for another partner with 15 years of experience, $720 for a senior associate with six years of experience, and $555 for a junior associate with three years of

experience); *Williams v. La Perla N. Am., Inc.*, 2024 WL 1974546, at *7 (N.D. Cal. May 3, 2024) (granting default judgment on breach of contract claim and awarding attorney's fees at the rate of $1,125/hour for a partner with 13 years of experience, $1,065/hour for a partner with over 40 years of experience, and $710/hour for an associate with three years of experience).

### b. Reasonableness of Hours Billed

Having determined the reasonable hourly rate to be applied, the undersigned proceeds to determine the number of hours reasonably expended on the litigation. *Fischer*, 214 F.3d at 1119. The Court "may not attempt to impose its own judgment regarding the best way to operate a law firm, nor to determine if different staffing decisions might have led to different fee requests." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1115 (9th Cir. 2008). At the same time, however, the Ninth Circuit has recently explained that "district courts have a *duty* to ensure that claims for attorneys' fees are reasonable, and a district court does not discharge that duty simply by taking at face value the word of the prevailing party's lawyer for the numbers of hours expended on the case. Rather, a district court must ensure that the winning attorneys have exercised billing judgment." *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1160 (9th Cir. 2018) (emphasis in original and quotation marks and citations omitted).

Plaintiff seeks $9,500 in attorney's fees. Mot. at 6; Suppl. Brief at 12, ECF No. 45. Records submitted by Plaintiff are itemized by the timekeeper and clearly detail the amount of time spent on each billed task. Amrein Suppl. Decl. ¶¶ 6-8 & Ex. E. The records do not suggest duplicative billing or an unreasonably high number of hours spent on any task. However, these records show that Mr. Amrein billed Plaintiff for $9,034.50 in fees, not $9,500. As such, the undersigned **RECOMMENDS** the Court award attorney's fees in the amount of $9,034.50.

3. Costs

The court also will award costs if "the prevailing practice in a given community [is] for lawyers to bill those costs separately from their hourly rates." *Trs. of Constr. Indus. & Laborers Health & Welfare Tr. v. Redland Ins. Co.*, 460 F.3d 1253, 1258 (9th Cir. 2006) (quotation marks omitted); *see* 29 U.S.C. § 1132(g)(2)(D). Plaintiff seeks costs in the amount of $1,129.91. Although it did not provide a breakdown of this amount, Plaintiff submitted billing records

1  showing that counsel billed $1,341.91 in costs for filing, service fees, and legal research costs.

2  Amrein Suppl. Decl., Ex. E.  The undersigned has reviewed the costs and finds them reasonable.

3  *See* Civil L.R. 54-3(a) (award of the clerk's filing fee is allowable where, as here it is paid by the

4  claimant).  Therefore, the undersigned recommends the District Court award costs in the amount

5  of $1,129.91.[3]

## V. CONCLUSION

For the reasons stated above, the undersigned **RECOMMENDS** the District Court **GRANT** Plaintiff Alameda Electric Distributors, Inc.'s Motion for Default Judgment and enter judgment against Defendant Eco Engineering Inc.  The undersigned further **RECOMMENDS** the Court award Plaintiff:

(1) Principal in the amount of $52,733.54;

(2) Prejudgment interest in the amount of $5,602.10 on the total sum due from April 30, 2024 through February 26, 2025, plus prejudgment interest on the remaining balance in the amount of $14.45 per day from February 27, 2025 through entry of judgment;

(3) Post-judgment interest pursuant to 28 U.S.C. § 1961; and

(4) Attorneys' fees and costs in the amount of $10,164.41, representing $9,034.50 in attorneys' fees and $1,129.91 in costs.

Plaintiff shall serve a copy of this Report and Recommendation upon Eco and file proof of service thereafter.  Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(2), a party may serve and file any objections within 14 days after being served.  Failure to file objections within the specified time may waive the right to appeal the district court's order.

**IT IS SO RECOMMENDED.**

Dated: October 10, 2025

THOMAS S. HIXSON
United States Magistrate Judge

---

[3] Plaintiff does not explain why counsel billed $1,341.91 in costs but it seeks $1,129.91.  As the amount Plaintiff seeks is lower, this discrepancy does not affect the undersigned's analysis.

19